UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| STACIE M. CRAIL, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:17-cv-00115-SLC |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Nancy A. Berryhill, Acting Commissioner of Social Security,* | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Stacie M. Crail appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for disability insurance benefits ("DIB").[1] (DE 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Crail applied for DIB in October 2013, alleging disability as of November 5, 2012. (DE 10 Administrative Record ("AR") 151-52). The Commissioner denied Crail's application initially and upon reconsideration. (AR 95-102). After a timely request, a hearing was held on September 1, 2015, before Administrative Law Judge Yvonne K. Stam (the "ALJ"), at which Crail, who was represented by counsel; Crail's mother; and a vocational expert testified. (AR 39-71). On November, 5, 2015, the ALJ rendered an unfavorable decision to Crail, concluding that she was not disabled because despite the limitations caused by her impairments, she could

---

[1] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

perform a significant number of jobs in the economy. (AR 20-33). Crail's request for review was denied by the Appeals Council (AR 1-16), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Crail filed a complaint with this Court on March 24, 2017, seeking relief from the Commissioner's decision. (DE 1). In the appeal, Crail alleges that the ALJ: (1) failed to properly evaluate the opinion of Karen Lothamer, her treating psychiatric nurse practitioner; and (2) improperly discounted the credibility of Crail's symptom testimony. (DE 18 at 6-10).

At the time of the ALJ's decision, Crail was 41 years old (AR 33, 151), had a high school education (AR 223), and had work experience as a sales person, an insurance processor, and a paralegal (AR 286). Crail alleges disability due to a depressive disorder and a panic disorder. (DE 18 at 2).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative

record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work

in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On November 10, 2015, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 20-33). At step one, the ALJ concluded that Crail had not engaged in substantial gainful activity after her alleged onset date of November 5, 2012. (AR 22). At step two, the ALJ found that Crail's depressive disorder, not otherwise specified, and her panic disorder were severe impairments. (AR 22-23). At step three, the ALJ concluded that Crail did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 23-25).

Before proceeding to step four, the ALJ determined that Crail's symptom testimony was "not entirely credible" (AR 26) and then assigned Crail the following RFC:

> [T]he claimant had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to no more than moderate exposure to pulmonary irritants; to simple, routine tasks; no work with the general public; brief, superficial, and infrequent contact with coworkers and

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

> supervisors; and work that is not done as a member of a team, so
> that work is done independently; and in a relatively unchanging
> setting and process; with no fast-paced work.

(AR 25). Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Crail was unable to perform any of her past relevant work. (AR 31). The ALJ found at step five that Crail could perform a significant number of other jobs in the economy, including electrical accessories assembler, small products assembler, and electronics worker. (AR 32). Therefore, Crail's application for DIB was denied. (AR 33).

### C. The Treating Psychiatric Nurse Practitioner's Opinion

Crail first argues that the ALJ failed to properly evaluate the opinion of Ms. Lothamer, her treating psychiatric nurse practitioner at Park Center. As background, Crail first received mental health treatment at Park Center from May 2014 to August 2014. (AR 588-651). On September 11, 2014, Crail withdrew from Park Center's services, declining any referrals or recommendations. (AR 590). Crail, however, returned to Park Center several weeks later. (AR 759). She participated in counseling approximately twice a month through May 2015. (AR 668-772). She was diagnosed with a major depressive disorder, recurrent, moderate; and a panic disorder with agoraphobia. (AR 693).

Crail saw Ms. Lothamer at Park Center for medication management in December 2014, March 2015, and June 2015. (AR 669-92). Mental status examinations were normal at all three visits, aside from a flat affect at the December 2014 visit. (AR 669-92). Ms. Lothamer consistently indicated that Crail was fully compliant with her medications, had no medication side effects, and was "[m]aintaining well and stable." (AR 672, 680, 689). On August 25, 2015, Ms. Lothamer completed a mental impairment questionnaire, opining, among other things, that

5

Crail would miss three or more days of work a month due to her mental illness, could stay on task for unskilled work less than 70% of the workday, would need to work alone or apart in physical isolation from others, and that her mental symptoms would worsen due to increased anxiety if she returned to work.[3] (AR 773-77).

The opinion of a nurse practitioner is not an "acceptable medical source" under the Social Security regulations, but rather is considered an "other source." *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1055 (E.D. Wis. 2005); SSR 06-03p, 2006 WL 2329939, at *1-2 (Aug. 9, 2006). Although information from an "other source" cannot establish the existence of a medically determinable impairment, it may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2; *see Koschnitzke v. Barnhart*, 293 F. Supp. 2d 943, 950 (E.D. Wis. 2003).

"[T]he adjudicator generally should explain the weight given to opinions from 'other sources,' . . . when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6; *see Masch*, 406 F. Supp. 2d at 1055 (stating that opinions from "other sources" must not be ignored). "[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-03p 2006 WL 2329939, at *4.

The ALJ penned a lengthy paragraph about the questionnaire completed by Ms. Lothamer. (AR 29-30). After summarizing Ms. Lothamer's opinions about Crail's mental

---

[3] The vocational expert testified that any one of these three limitations would prevent the performance of competitive work. (AR 70-71).

limitations, the ALJ reasoned:

> In general, lay statements lack the credentials to offer acceptable medical opinions, however, Ms. Lothamer does have training in the mental sphere: however, her records do not support her opinion. Here, Ms. Lothamer's treatment records generally reflect that the claimant was cooperative, pleasant, and attentive. In addition, the claimant's behavior was appropriate and she demonstrated good and appropriate judgment. Accordingly, Ms. Lothamer's statements were given little weight.

(AR 29-30 (internal citations omitted)).

In challenging the ALJ's discounting of Ms. Lothamer's opinion, Crail acknowledges that the ALJ is generally correct that Ms. Lothamer's mental status examinations reveal that Crail was cooperative and demonstrated good judgment. (DE 18 at 7). Crail asserts, however, that these abilities are not necessarily inconsistent with absenteeism problems because mental illness is episodic. (DE 18 at 7 (citing *Kangail v. Barnhart*, 454 F.3d 627, 729 (7th Cir. 2006)). Crail further points out that Ms. Lothamer stated that her anxiety symptoms would worsen if she returned to work.

But Crail's argument amounts to merely a plea to reweigh Ms. Lothamer's opinion—a task which the Court cannot do. *See Clifford*, 227 F.3d at 869 (recalling that courts "do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner" (citations omitted)). The ALJ adequately articulated why she assigned little weight to Ms. Lothamer's opinion, and the ALJ's rationale for doing so is supported by the record. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (stating that the ALJ must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning). Ms. Lothamer's mental status examinations do not reveal any objective evidence to support the

severe limitations articulated in her questionnaire, as the examinations reflect essentially normal mental status findings. (*See* AR 669-92); 20 C.F.R. § 404.1527(c)(3) (stating that the more a medical source presents relevant evidence, the more weight the ALJ will give the opinion).

Furthermore, as to the episodic nature of mental illness, the ALJ expressly acknowledged that Crail's mental symptoms "waxed and waned" over time. (AR 26). But the ALJ further observed that despite the waxing and waning, Crail "had general improvement with treatment compliance." (AR 26). This is an accurate summary of the record. In fact, Crail does not actually disagree with the ALJ's characterization of the record; instead, she asserts that "improvement in her symptoms does not mean that she is able to return to work." (DE 22 at 2-3). In support, Crail points to her diagnosis of panic disorder with agoraphobia, her statement to Ms. Lothamer in June 2015 that she is not able to work due to panic and being unable to leave her house without someone with her (AR 669), and Ms. Lothamer's opinion that her symptoms would worsen if she were to return to work.

But the diagnosis of an impairment does not alone establish its severity or limitations. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of [the claimant's] but their severity and, concretely, whether as she testified . . . they have caused her such severe pain that she cannot work full time."). As the ALJ correctly observed, with increased treatment compliance, Crail was taking her daughter to and from school everyday, taking her dog outside every day, getting out of the house more and participating in various activities, socializing more, going grocery shopping for several hours each week, and looking forward to obtaining disability benefits and moving to Florida. (AR 23, 27-28, 254-55, 257, 607, 668, 742-45). In fact, in October 2014, Crail reported

that her medical problems were being handled by medication and were not holding her back from life experiences. (AR 742-43). Crail also expressed that she would like to work, and her counselor gave her resources for part-time employment, but Crail declined these options due to wanting to obtain disability benefits. (AR 722, 726, 728, 746). Thus, the ALJ adequately supported her conclusion that Crail steadily improved with treatment compliance and that her mental symptoms were not disabling.

Crail also argues that while Ms. Lothamer's mental status examination findings may have been benign, a mental status examination in May 2014 completed by Julie Godsey, a mental health clinician at Park Center, revealed slowness, withdrawn behavior, agitation, distractibility, poor judgment, minimal insight, and decision-making problems. (AR 639-40). Crail contends that the ALJ did not discuss this May 2014 treatment record that supports disability. But the ALJ *did* discuss Ms. Godsey's May 2014 examination. (AR 26 (citing AR 588-95)). The ALJ correctly noted that Ms. Godsey's May 2014 examination was Crail's initial visit to Park Center *before* Crail began medication management and counseling at Park Center. (AR 26). The ALJ accurately surmised that thereafter Crail experienced "general improvement with treatment compliance." (AR 26).

Next, Crail argues that the ALJ should have assigned Ms. Lothamer's opinion more weight because it was the most recent opinion by a mental health professional. It is true that Ms. Lothamer's opinion was "the most recent professional word on [Crail's] mental impairments." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). But the ALJ was obviously aware of this, as the ALJ chronologically summarized Park Center's records in detail in her decision. (AR 27). Ultimately, however, the ALJ assigned little weight to Ms. Lothamer's opinion because her

9

mental status examinations did not reveal any objective evidence to support the severe limitations articulated in her questionnaire. 20 C.F.R. § 404.1527(c)(3). That Ms. Lothamer's opinion was the most recent statement from a mental health provider does not negate the fact that her opinion lacked the support of objective medical evidence. As already explained, the ALJ gave a good reason to discount Ms. Lothamer's opinion, and the Court may not reweigh it at this juncture. *See Clifford*, 227 F.3d at 869.

Finally, Crail faults the ALJ for discounting Ms. Lothamer's opinion on the basis that it was from an "other source," rather than from an "acceptable medical source." Crail emphasizes that it is possible, depending on the particular facts of the case, for an opinion from an "other source" to outweigh an opinion from an "acceptable medical source." *See* SSR 06-03p, 2006 WL 2329939, at *4. But again, the ALJ provided a good reason—the lack of supporting objective evidence—to assign less weight to Ms. Lothamer's opinion. *See generally Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." (citations omitted)). Consequently, the ALJ's discounting of Ms. Lothamer's opinion is supported by substantial evidence.[4]

---

[4] Crail tacks on an additional argument in her reply brief that the ALJ failed to discuss a statement in the opinion of Dr. Andrew Miller, who examined her in November 2013 and whose opinion to which the ALJ gave "great weight." (AR 29). In that argument, Crail alleges that the ALJ erred by failing to mention that Dr. Miller stated that "[a]though her activities appear to be simple, her ability to sustain these efforts on a daily basis appeared to be impaired." (AR 557). Crail contends that this statement is consistent with Ms. Lothamer's opinion that she would have difficulties with attendance and staying on tasks.

Crail, however, did not advance this argument concerning Dr. Miller's opinion in her opening brief, and "arguments raised for the first time in a reply brief are deemed waived." *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) (citations omitted). And even if not waived, the argument is unpersuasive, as this statement by Dr. Miller does not rise to the level of a separate line of evidence. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[A]n ALJ need not discuss every piece of evidence in the record, [but] the ALJ may not ignore an entire line of evidence that is contrary to the ruling." (citations omitted)). The ALJ concluded that Crail had some mild impairments in her activities of daily living and in maintaining concentration, persistence, or pace (AR 23-24), and this finding is not inconsistent with Dr. Miller's general observation that Crail's ability to sustain her daily activities was "impaired."

### D. The Credibility of Crail's Symptom Testimony

Crail also argues that the ALJ improperly discounted her testimony that she had difficulty sustaining activity due to her depression and anxiety, which caused her sleeping problems and to isolate herself. The ALJ discounted Crail's symptom testimony for various reasons, including that Crail's testimony was inconsistent with her ability to perform daily activities, her ability to get along with others, her pursuit of volunteer work or employment, her report of medication side effects, and the objective medical evidence.[5] (AR 28-29). Ultimately, the ALJ's consideration of Crail's symptom testimony will be affirmed.

Because the ALJ is in the best position to evaluate the credibility of a witness, her determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435; *see Carradine*, 360 F.3d at 754 (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . ." (citation omitted)). "[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994) (citations omitted); *see Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must

---

[5] Crail does not directly challenge the ALJ's consideration of the objective medical evidence of record with respect to her symptom testimony.

be valid as long as *enough* of them are[.]" (citations omitted)).

First, Crail alleges that the ALJ improperly discounted her symptom testimony about medication side effects. Crail testified at the hearing that her medications cause her to feel drowsy for two hours after taking them. (AR 57-58). The ALJ observed, however, that the record reflects that Crail consistently denied having any medication side effects to her health care providers, which the ALJ concluded undermined Crail's symptom testimony. (*See, e.g.*, AR 617, 657, 661, 672, 688, 696, 704). Crail concedes that her testimony of medication side effects at the hearing is not supported by the record, but contends that some patients may not complain about side effects to their health care providers because the benefits of the medication outweigh the side effects. (DE 18 at 9). Citing *Terry*, 580 F.3d at 478, she argues that the ALJ should have asked her whether that was the circumstance in this case.

In *Terry*, the Seventh Circuit Court of Appeals stated: "[W]e are skeptical that a claimant's failure to identify side effects undermines her credibility—after all, not everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects." *Id.*; *see Stahl v. Colvin*, 632 F. App'x 853, 860 (7th Cir. 2015) ("[A] failure to report side effects to doctors does not, in and of itself, discredit complaints of 'disabling pain.'" (citation omitted)). Having said that, the Court further found in *Terry* that the ALJ had repeatedly mischaracterized the record because the claimant had, in fact, reported medication side effects to her doctors. 580 F.3d at 478.

Crail, in contrast, does not highlight any mischaracterization of the record by the ALJ with respect to medication side effects. Rather, Crail concedes that she did not report any medication side effects to her providers. Of course, Crail bears the burden of producing

12

sufficient evidence to support her claimed disability, *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004); *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004), and here she relies solely on her own testimony of medication side effects. In any event, Crail's failure to report medication side effects to her health care providers was just one of several factors considered by the ALJ when assessing Crail's symptom testimony. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (affirming the ALJ's credibility determination because it was not "patently wrong" or "divorced from the facts contained in the record," even though some of the ALJ's findings were "a bit harsh").

Next, Crail argues that the ALJ improperly discounted her symptom testimony based on her daily activities, failing to appreciate critical differences between the ability to perform daily activities and the ability to perform full-time work. (*See* DE 18 at 9 (citing *Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016)). Crail emphasizes that her activities consume only a short period of time, that she never testified that she could not go outside at all, and that she receives support from her daughter and her mother. But Crail's assertion of error is without merit. The ALJ is entitled to consider a claimant's daily activities as a factor when assessing the credibility of her symptom testimony. *See Schmidt*, 395 F.3d at 746-47; 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ fairly assessed Crail as having just mild limitations in her daily activities, which regularly involved activities outside of her house such as taking her daughter to and from school each day, walking her dog several times a day, shopping for groceries each week, and attending various medical and counseling appointments. (AR 23-25, 28). Contrary to Crail's assertion, the ALJ did not improperly equate her ability to perform daily activities with an ability to perform competitive work, but instead properly assessed her activities as just one factor in the

credibility assessment. *See, e.g.*, *Contreras v. Berryhill*, No. 16 CV 9037, 2017 WL 3592699, at *6 (N.D. Ill. Aug. 21, 2017) (considering a claimant's daily activities as just one factor in a credibilty assessment, in contrast to improperly equating daily activities with an ability to work).

Additionally, Crail criticizes the ALJ for considering in the credibility assessment her ability to resolve a confrontation with a neighbor in January 2015. (AR 27). She emphasizes that while she was successful in this one instance, the evidence reflects that she frequently isolates herself for most of the day. (DE 18 at 10 (citing AR 238, 257, 556-57, 636, 759)). But the ALJ did not improperly consider this evidence either; rather, she simply referred to this encounter as just one example of Crail's mental health improvement with treatment compliance. Indeed, the record reflects that as Crail complied with treatment, she reported improvements in her life, such as successfully using coping strategies to get out of the house more, to become more assertive and establish boundaries, and to socialize and exercise. (AR 27).

Finally, Crail argues that the ALJ improperly considered in the credibility determination her testimony that she was looking for part-time work. Crail emphasizes that persisting in looking for work after filing a disability claim may be no more than a sign of a persistent work ethic or an overly optimistic view, rather than an exaggerated condition. (DE 18 at 10 (citing *Ghiselli*, 837 F.3d at 778)). However, in this instance, the Court cannot fault the ALJ for her consideration of Crail's work efforts. The ALJ fairly considered that Crail returned to work part-time for a brief period in February 2013 (after her alleged onset date) and that she was looking for work in 2015, even though she repeatedly expressed that she wanted to obtain disability benefits. (AR 26, 28, 544, 568, 722, 726, 728, 746). The ALJ did not place too great of weight on Crail's performance of part-time work in 2013 or that Crail was looking for part-time work in

2015, but rather, properly considered this evidence as just one factor in her credibility assessment. *See Berger*, 516 F.3d at 546 ("Although the diminished number of hours per week indicated that Berger was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."); *Maxwell v. Berryhill*, No. 16 C 6101, 2017 WL 4180340, at *7 (N.D. Ill. Sept. 21, 2017) (rejecting the claimant's argument that the ALJ placed too much emphasis on her part-time work and commenting that the claimant was overstating the ALJ's findings, as the ALJ considered the claimant's part-time employment as just one factor in his credibility analysis); *Sipahimalani v. Colvin*, No. 1:12-cv-892-DKL-SEB, 2013 WL 5309898, at *7 (S.D. Ind. Sept. 23, 2013) (finding no error where the ALJ did not rely solely on the claimant's performance of part-time work in making his credibility determination and did not reject her symptoms entirely); *Bailey v. Astrue*, No. 1:09-CV-43, 2009 WL 5176156, at *13 (N.D. Ind. Dec. 21, 2009) (collecting cases).

At the end of the day, "an ALJ's credibility assessment will stand 'as long as [there is] some support in the record.'" *Berger*, 516 F.3d at 546 (alteration in original) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)). Here, when assessing the credibility of Crail's symptom testimony, the ALJ built an adequate and logical bridge between the evidence of record and her conclusion, *see Ribaudo*, 458 F.3d at 584, and her conclusion is not "patently wrong," *Powers*, 207 F.3d at 435. Consequently, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will stand, and the final decision of the Commissioner will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk

is directed to enter a judgment in favor of the Commissioner and against Crail.

SO ORDERED.

Entered this 18th day of July 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge